Good morning, Your Honors, and may it please the Court, my name is Marlene Bennett and I represent Petitioner Mr. Hong Guang Jin. At this time, I'd like to reserve two minutes for rebuttal. Now watch your clock. I will. Thank you. Mr. Jin respectfully requests that this Court reverse the decisions below, finding him ineligible for asylum, withholding of removal, and relief under the Convention Against Torture, based on the immigration judge's adverse credibility finding. Mr. Jin requests these decisions be reversed because a substantial evidence standard is not met in this case. A substantial evidence standard is not satisfied for two main reasons. First, the immigration judge based his adverse credibility finding on minor inconsistencies in the record that do not go to the heart of Mr. Jin's claim. And second, the immigration judge based the remainder of his decision upon speculation and conjecture and not evidence in the record. On these bases, we request that the decisions below be reversed. To my first point, the substantial evidence standard is not met here because the immigration judge based his opinion upon minor inconsistencies in the record. First, the immigration judge took issue with the fact that a beating suffered by Mr. Jin at the hands of his employer was omitted from his initial asylum application. This case is similar to the Lopez-Reyes v. INS case, wherein Mr. Lopez-Reyes had included a vague description of his experiences with the guerrillas in Guatemala, saying he had trouble with them and had experienced death threats. And then later on, he said that he was beaten up and shot at, etc. Similarly, in his initial asylum application, on page by the birth control office to abort his wife's second pregnancy. And then later on, he included more details as to what this intense pressure included, which was this beating by his employer. Furthermore, Mr. Jin gave it a reason for why the full details were not included in the initial I-589, which was that his attorney had advised him to focus on the experiences of his wife because this was a claim under the one-child policy. Similarly, the immigration judge took issue with the fact that Mr. Jin's testimony that he was baptized on September 1st, whereas his baptismal certificate states that he was baptized September 3rd. And this was another basis for the immigration judge's adverse credibility finding. However, this court in Cower v. Gonzalez said that it wants to avoid premising adverse credibility findings on the applicant's failure to remember non-material trivial details. And a difference of two days is an immaterial detail. To my second point, the immigration judge's opinion also does not meet the substantial evidence standard because the remainder of it was based upon speculation and conjecture and not upon evidence in the record. And, excuse me, as according to the Miani v. INS case, conjecture and speculation can never replace substantial evidence as the basis for an adverse credibility finding. First, the immigration judge found incredible that Mr. Jin would have attempted to register his child with the authorities after having gone so far as to have the second child in hiding. However, Mr. Jin explained in his original I-589 that he attempted to register his child because this was the only way that she would be able to receive government benefits like education and health care. And as according to the Sagodayek v. Gonzalez case, the I.J. cannot ignore arguments raised by the party. And the I.J. does not consider this in his opinion, nor did he ask Mr. Jin, nor did the government attorney ask Mr. Jin during testimony why he went to Dalian to try to register his child. They just asked him whether he went and what happened there, but not why. And Mr. Jin does provide this reason for why they went, that he wanted to be able to give his daughter benefits from the government. Next, the immigration judge took issue with, he found incredible Mr. Jin's experience at the consulate when he was obtaining his visa to come to America. Here, the immigration judge found Mr. Jin incredible when he stated that he submitted the, submitted the, excuse me, submitted the forms and there wasn't much interaction there with the consulate. However, if, the immigration judge again is, sorry, is basing this upon speculation and conjecture. And this is similar to the Gee v. Ashcroft case where this court reversed an adverse credibility finding for impermissible speculation about how an applicant obtained his travel documents. And similarly here, the immigration judge was speculating as to what happened at the consulate. Ms. Bennett, can an immigration judge ever rely upon his past experience, things that make logical sense as opposed to covering or citing to something that was specifically in the testimony? Your Honor, according to the Singh v. Gonzalez case, the immigration judge would be able to rely on prior knowledge or prior experience. However, he would need to state that in his opinion, that this is what he's basing his opinion on. Because without that, we don't know what he's basing his opinion on. It could be on past experience, it could be on a gut feeling, and we don't, and we don't know. So we don't have the substantial evidence standard being met there because we're just not sure what he's basing his opinion on, whether it be on past experience or that sort of thing. So there's possibly a deficiency because he didn't say enough about why, as the example you've used, he didn't have any interview or discussion with the consulate before he got his visa. I'm sorry. I'm not sure I understand your question. Mr. Gin said that he didn't have any interaction with anyone at the consulate. He just presented his papers and got the visa. Correct. Could the I.J. have said more? For example, saying, in my experience, or regulations require or it's customary for? Yes, Your Honor. He could have said, I know from experience or from foreign affairs manuals or whatever it may be, this is how the consulate operates and this is what should have happened and it didn't. And he didn't go that far. And so we don't know what it was upon his own speculation about how this interaction should have taken place in his opinion. And that, as we know, that does not meet the substantial evidence standard. Thank you. You're welcome. Ms. Ginnett, suppose we agree with you that the I.J.'s adverse credibility decision is not supported by substantial evidence. What is the relief you believe your client is entitled to? Your Honor, we would ask that this Court reverse the decisions below. And as Mr. Ginnett is eligible for asylum statutorily under 8 U.S.C. 1101-842, the He v. Ashcroft case states that a remand would not be required. So we would ask that the decisions below be reversed and he be granted asylum and in the alternative, remanded. Now, under our Tang case, wouldn't he also be eligible for withholding? I'm sorry. I'm not familiar with that case, Your Honor. Okay. Well, I think we have law out there that says that if he's established the statutory requirements under the population growth policy, that he would also be entitled to withholding. Then, yes, Your Honor, he should be, as it is more likely than not that he will be persecuted if he's returned to China. And in addition, his wife did suffer this. The history even has to show that under some of our case law. Then we agree with you that the decision isn't supported by substantial evidence. Then if he meets the Tang case, Your Honor, I believe then, yes, he would be eligible for withholding. Do you want to reserve the rest of your time? I would. Okay. Thank you. Good morning and may it please the Court. I'm Paul Fiorina for the Respondent. The immigration judge had found that Petitioner failed to articulate a credible claim and the reasons he cites in his decision find support in the record and the record taken as a whole supports the immigration judge's adverse credibility finding. Now, this is a pre-Real ID Act case, right? Yes. So we would apply the Ninth Circuit law governing the requirements for an adverse credibility determination that existed until the law was changed, I guess. Correct. Do you know what the effective date of that law was? May 11, 2005. Okay. The asylum application would have to have been filed after May 11, 2005. All right. Now, each of the contradictions or implausibilities may be subject to several inferences. The Court's task is to determine whether the immigration judge's inferences are supported by the record. He didn't identify just one doubt. He identified several doubts about the Petitioner's credibility. The omission of the beating in his initial asylum application is probably the most glaring omission and it's not at all a minor detail. Could I interrupt just a minute? Mr. Fiorina, one of the things that makes this difficult about whether you filled out your paperwork correctly or put correct dates or completed it, there's a language problem. My understanding is, is that all of the paperwork that the immigration judge found to have discrepancies or not be complete was completed in English, obviously completed by someone other than Mr. Ginn, but based on a translation of what he may have said. Well, there's no evidence in the record that there were any language problems. He didn't say I didn't understand, I can't understand the translation. And in respect to the beating, the beating is a big, big event. You can't attribute the complete omission of such an act merely to problems in translation. That's a big, glaring event. And in and of itself, if it were true, would be grounds potentially for him to get asylum in his own right based on manifesting opposition to the Chinese course of population control. So it's not at all a minor detail. It's a big one. And the immigration judge was correct in deciding that the petitioner lacked credibility. As a matter of law, the beating to make out his claim under the statute concerning the one-child policy, he doesn't have to allege he was beaten. That is not an element of the claim. So if his lawyer advised him, you know, you don't have to go into all that, why isn't that a reasonable thing? Why does he have to throw everything in, even if it's not exactly relevant to what he's asserting before the IJ in his application? It's not an issue of whether he was beaten or how much he was beaten. The issue is his credibility about whether he's telling the truth at all. And if he doesn't say it in his one application and he does say it. But explain to me then why the beating is relevant to his claim for asylum under the statute. Because it's a glaring omission that he didn't say in his one application and he did say in his testimony. He didn't say it, but I'm asking you why under the statute is it necessary for him to say it? It's not necessary for him. For an issue of determining credibility, we're not determining the merits.  No, but I know his point was that his lawyer said, oh, it's not necessary to go into that. That's what he alleges. Yeah, but as a matter of law, isn't that correct? It might be correct. Am I? Don't you know what the law is here?  It's not the law. It's the credibility. The lawyer's advice, which you concede is correct as a matter of law, that that is and that should be viewed as a negative on his credibility. Yes, because he's not telling the truth. We don't concede that he even spoke to a lawyer. We don't concede that he was beaten. Well, how do you think the papers got filled out? What's that? How do you think the papers got filled out and filed? I don't know. He filled them out maybe with somebody's help. But the issue, Your Honor, is credibility, whether he's telling the truth. Doesn't the record reflect? You can't jump ahead to assume that he actually – what he actually said happened. Doesn't the record reflect that he did not read and write in English? Yes. And so we know he didn't fill out the papers because the papers were in English. Right. And so someone obviously had to read the papers to him and translate his response or decide what parts of his responses to include in the application. We know a third party was involved. Yes. So how can the omission of things from an application that he can't read – and this goes to the baptismal certificate also – or discrepancies form the basis of a credibility problem when he can't read what it says and he's not the one that filled it out? If you credit what he says, he said, someone help me fill it out. I told them what happened to me. So we presume that he told them what happened. He didn't mention being beaten. They told him, don't put that on there, it doesn't matter. And then he gets a new lawyer and says, yes, that does matter. It's possible to assume that he was given that advice and that that advice is legally correct. It's also possible to assume, as the immigration judge did in this case, that that omission, taken together with all of the other problems, support a finding that he wasn't credible. In other words, if the immigration judge looked at the guy and he said, I find him to be assertive, articulate, and detail-oriented, he made an assessment of how he presents himself in the courtroom. And the immigration judge said that I don't buy it, what he says, that he was told to omit this. The issue for the court is to determine whether that conclusion is supported by substantial evidence, not to take what he says and assume it's true and say, well, he could have been, you know, speculated he could have been told this and isn't it legally true. The task for the court is to look at the reasons cited by the immigration judge and decide whether all of them support a finding that he wasn't credible. Let me go back to Judge Wardlaw's last question to counsel for Mr. Ginn. And that is, if we agree with the appellant that there isn't substantial evidence in the record to support the credibility, the adverse credibility determination, what is our remedy? You have to remand it to the board to assess the merits in the first instance. The immigration judge didn't weigh the merits of his assertions and determine whether as a matter of law he had been persecuted in the past or whether as a matter of law he had a well-founded fear of future persecution. The immigration judge basically cut him off and said, I don't find you credible based on all the reasons that he cited, reasons that are supported in the record. For the court to determine that his decision is not supported, the court would have to then send it back with basically the immigration judge is forced at that point to take everything that he says is true and determine whether those assertions, if true, would constitute legal grounds for granting him asylum. So it's the case law says that would be the result. He was the immigration judge found him incredible. Therefore, all of his testimony is unbelievable, and there's nothing there really to support his claim. But if he really is credible, then what he testified to would have to be taken as true. And if our case law says taking as true the facts to which he testified, he has established his eligibility for asylum. If that's our case law, what point would there be in remanding it to the BIA? Well, if that's the case law, my understanding is that the board hasn't spoken on the issue of asylum or withholding yet. The immigration judge hasn't. But if that's the case law, then the court presumably could. If our case law says he's also entitled to withholding of removal, I suppose we would grant that. Yes. And then we'd get to the cat claim. What would we do about the cat claim? You'd have to remand that. If the case law doesn't support it, you'd have to remand to the IJ to make that call in the first instance. Okay. This is just a practical question. I noticed that the IJ in this case is no longer an immigration judge. So if we were to follow your suggestion and remand, what would happen to the case? Would it be reassigned to another judge or would the BIA actually make the decision? That's a good question. I don't have an answer to that. I don't know whether it would go back to the board, and the board would have to send it back to the IJ because the board affirmed that opinion. And it would presumably go to the same district or the same city. I guess San Francisco is the city. And the executive office for immigration review would assign it to a sitting judge here. I think it's San Francisco, if I'm not mistaken. I'm out of time. But I'd just like to sum up and say that the omission of the beating is a glaring omission. Case law, this circuit supports the finding that based on the admission of such a major event, you can find a petitioner lacks credibility. And every other reason the immigration judge cites, though it's possible to give it a different interpretation, the court should look at the reasoning of the immigration judge and decide that his adverse credibility finding is supported by substantial evidence. Thank you. Thank you very much, counsel. Thank you, Your Honors. Two points on rebuttal. First, the beating is a minor inconsistency. As the bench pointed out, it's not required for Mr. Ginn in order to meet the asylum requirements. He's statutorily eligible based upon his wife's forced abortion. Second, if we look at page 369 of the record, Mr. Ginn's initial asylum application indicates it was filled out by the law offices of L. Allen Martin. So we do have proof that Mr. Ginn was under the advice of an attorney who spoke English, because Mr. Ginn does not, when he filled out his initial asylum application. I think what the opposing counsel was suggesting is that maybe the person who he thought was an attorney wasn't in fact an attorney, that it could have been someone holding himself out as an attorney, that he wasn't, which could very well be the case. We just don't know. We don't know. However, the I-589 does say the law offices of L. Allen Martin. In addition, on page 158 of the record in testimony, Mr. Ginn said that the attorney advised him to concentrate his wife, on his wife, excuse me, and that he didn't dispute this because he did not understand and he trusted his attorney. So we do also have evidence that Mr. Ginn was not fully aware of these processes and what, that he must include this beating if it happened. Second, opposing counsel seemed to indicate that we might need to aggregate these inconsistencies and take them all together. However, this Court said in Cower v. Gonzales that you can add up inconsistencies to find adverse credibility if they're significant. And as stated before, we don't have significant inconsistencies here, just minor ones. All right. Thank you, counsel. Thank you, Your Honor. Once again, thank you to the University of Santa Clara and the excellent pro bono work. Professor. All right. The next case, U.S. v. Cooper, is submitted. And Cash Processing Services v. Ambient Entertainment is also submitted on the briefs. So we will take up Burgess v. Gilman.
judges: Thompson, Wardlaw, Bolton